UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
MARTHA E. TARSIA,

                                    Plaintiff,

          -v-                                    3:07-CV-588-DNH


MICHAEL J. ASTRUE, Commissioner of
Social Security,

                                    Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                              OF COUNSEL:

LACHMAN & GORTON                          PETER A. GORTON, ESQ.
Attorneys for Plaintiff
P.O. Box 89
1500 East Main Street
Endicott, New York 13761-0089

OFFICE OF REGIONAL GENERAL COUNSEL        ANDREEA L. LECHLEITNER, ESQ.
SOCIAL SECURITY ADMINISTRATION
REGION II
Attorneys for Defendant
26 Federal Plaza, Room 3904
New York, New York 10278

DAVID N. HURD
United States District Judge

<u>**MEMORANDUM-DECISION and ORDER**</u>

I. <u>INTRODUCTION</u>

          Plaintiff Martha E. Tarsia ("plaintiff") brings this action pursuant to 42 U.S.C. §§

405(g) & 1383(c)(3) to review a final decision of the Commissioner of Social Security denying

plaintiff's application for Social Security disability and supplemental security income disability

benefits ("benefits").  The parties filed their briefs, including the Administrative Record on

Appeal (cited to as "R."), and the matter was submitted for decision without oral argument.

## II. **BACKGROUND**

Plaintiff is currently 71 years old and began working as an optical inspector in 1961. In 1976, she underwent surgery on her left knee to treat a prior injury.  Despite the surgery, her knee pain worsened over time, and she began to experience substantial difficulty walking or sitting for long periods.  She alleges her physical limitations compelled her to retire from her job as an optical inspector on February 26, 1993.

In May of 1998, plaintiff's general practitioner, Dr. Peter LaFaso, treated plaintiff for diabetes and high blood pressure.  An MRI performed in May of 1999 revealed advanced degenerative disease of her left knee.  Plaintiff first filed an application for benefits on October 15, 1999.  The Administrative Law Judge ("ALJ") denied her initial application on September 18, 2000.  (R. at 18.)  Although the Appeals Council denied plaintiff's request for review of the ALJ's decision on April 1, 2002 (id. at 5), the parties later stipulated to reverse and remand the ALJ's decision for a rehearing of plaintiff's application.  (Id. at 159.) Following the rehearing, the ALJ again denied plaintiff's application on May 14, 2004 on the basis that she was not entirely credible and that her Residual Functional Capacity ("RFC") did not preclude her from participating in sedentary work.  (Id. at 157.)  Accordingly, the ALJ determined plaintiff was not disabled as defined within the Social Security Act on or prior to the date she was last insured, December 31, 1998.  (Id.)  In support of her second appeal, plaintiff submitted new opinion evidence from another evaluating physician, Dr. Irwin Rosenberg.  (Id. at 137, 143.)  On May 7, 2007, the Appeals Council again denied plaintiff's request for review of the ALJ decision, thereby rendering the ALJ's determination the final decision of the Commissioner of Social Security ("Commissioner").  (Id. at 137.)

## III. SOCIAL SECURITY DISABILITY CLAIM DECISIONS

### A. Standard of Review of a Final Decision

The scope of a court's review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence and whether the correct legal standards were applied.  Poupore v. Astrue, 566 F.3d 303, (2d Cir. 2009) (per curiam) (citing Machadia v. Apfel, 276 F.3d 103, 108 (2d Cir. 2002)); Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987)).  "Substantial evidence means 'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Poupore, 566 F.3d at 305 (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 217 (1938)).  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988) (citing Universal Camera Corp. v. NLRB, 340 U.S. 474, 488, 715 S. Ct. 456, 464 (1951)).  If the disability determination is supported by substantial evidence, that determination is conclusive.  Id.  However, "where there is a reasonable basis for doubting whether the appropriate legal standards were applied," the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence.  Martone, 70 F. Supp. 2d at 148 (citing Johnson, 817 F.2d at 986).

A reviewing court may enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g); see Martone, 70 F. Supp. 2d at 148.  "Remand is

appropriate where there are gaps in the record or further development of the evidence is needed," such as where new, material evidence has become available.  42 U.S.C. § 405(g); Martone, 70 F. Supp. 2d at 148 (citing Parker v. Harris, 626 F.2d 225, 235 (2d Cir. 1980)).  A remand for rehearing directing the taking of additional evidence is warranted only if it is shown that there is new, material evidence "'and that there is good cause for the failure to incorporate such evidence into the record'" at the administrative hearing.  Carroll v. Sec'y of Health and Human Servs., 705 F.2d 638, 643-44 (2d Cir. 1983) (quoting 42 U.S.C. § 405(g), as amended in 1980)).  Remand may also be appropriate if the Commissioner "misapplies the law or failed to provide a fair hearing."  Id. at 644.  However, where the underlying administrative decision is not supported by substantial evidence, reversal is appropriate because there would be no useful purpose in remanding the matter for further proceedings. Id. (reversing and remanding solely for calculation of benefits, subject to determination by the district court of any motion by the agency to remand to consider new evidence); Parker, 626 F.2d at 235 (reversing and remanding solely for calculation and payment of benefits); Simmons v. United States R.R. Ret. Bd., 982 F.2d 49, 57 (2d Cir. 1992) (same); Williams, 859 F.2d at 261 (same).

### B.  The Five Step Evaluation Process

The Social Security Act defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  In addition, the Act requires that a claimant's

physical or mental impairment or impairments [must be] of such severity
that he is not only unable to do his previous work but cannot, considering
his age, education, and work experience, engage in any other kind of
substantial gainful work which exists in the national economy, regardless
of whether such work exists in the immediate area in which he lives, or
whether a specific job vacancy exists for him, or whether he would be
hired if he applied for work.

Id. § 423(d)(2)(A).

The ALJ must follow a five step evaluative process in determining whether an
individual is disabled. See 20 C.F.R. §§ 404.1520, 416.920. In the first step the ALJ must
determine whether the claimant is engaging in substantial gainful activity. If the claimant is
engaging in substantial gainful activity, he is not disabled and is not entitled to benefits. Id.
§§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, then step two requires
the ALJ to determine whether the claimant has a severe impairment or combination of
impairments which significantly restricts his or her physical or mental ability to perform basic
work activities. Id. §§ 404.1520(c), 416.920(c). If the claimant is found to suffer from a
severe impairment, then step three requires that the ALJ determine whether the impairment
constitutes an impairment as listed in Appendix 1 of the regulations. Id. §§ 404.1520(d),
416.920(d); see also id. Part 404, Subpt. P, App. 1. If so, then the claimant is "presumptively
disabled." Martone, 70 F. Supp. 2d at 149 (citing Ferraris v. Heckler, 728 F.2d 582, 584 (2d
Cir. 1984)); see also 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires the ALJ to assess
whether the claimant's residual functional capacity ("RFC") precludes the performance of his
or her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). A treating physician's
opinion is afforded significant weight so long as it is "'well-supported by medically acceptable

clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" Poupore, 566 F.3d at 307 (quoting 20 C.F.R. § 404.1527(d)(2)).  However, where the treating physician's opinion is not supported by medical evidence, it is not entitled to significant weight.  Id.  The burden of proof with regard to the first four steps is on the claimant.  Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996); Ferraris, 728 F.2d at 584.

If it is determined that claimant cannot perform past relevant work, the burden shifts to the agency for the fifth and final step.  Perez, 77 F.3d at 46.  This step requires the agency to examine whether the claimant can do any type of work.  Id. §§ 404.1520(g), 416.920(g).  The regulations provide that "factors such as a claimant's age, education, and previous work experience" should be evaluated to determine whether a claimant has the residual functional capacity to perform work in any of five categories of jobs: very heavy, heavy, medium, light, and sedentary."  Perez, 77 F.3d at 46 (citing 20 C.F.R. § 404, Subpt. P, App. 2).  "[T]he Commissioner need only show that there is work in the national economy that the claimant can do; he need not provide additional evidence of the claimant's residual functional capacity."  Poupore, 566 F.3d at 306.

A claimant may seek review of an adverse decision by the ALJ from the Appeals Council.  Perez, 77 F.3d at 44.  If review is granted, the decision of the Appeals Council is the final decision of the Commissioner.  Id.  If, as with plaintiff's claim, review is denied, the final decision is that of the ALJ.  Id.  The final decision is judicially reviewable pursuant to 42 U.S.C. § 405(g).

## IV.  DISCUSSION

Neither party contests that plaintiff's prior employment duties fell within the category of sedentary work.  In support of her claim, plaintiff challenges the ALJ's decision on three separate grounds.  First, plaintiff contends the ALJ improperly discredited her subjective accounts of disabling pain and physical limitations.  Second, plaintiff argues the ALJ's determination as to her RFC is not supported by substantial evidence in light of the opinions offered by her general practitioner and orthopedic physician.  Third, plaintiff argues the Appeals Council improperly discounted the relevance of new medical evidence offered by Dr. Rosenberg.  In light of the evidence in the record and the relatively lengthy procedural history, plaintiff contends reversal is warranted rather than remanding her application to the ALJ for further findings.

### A.  Subjective Accounts of Pain and Physical Limitation

In consideration of a claimant's subjective accounts of how her level of pain affects her ability to work, an ALJ will evaluate the claimant's statements in relation to the objective medical evidence.  20 C.F.R. § 404.1529(c)(4).  In particular, an ALJ must look for "whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [the claimant's] statements and the rest of the evidence, including [the claimant's] history, the signs and laboratory findings, and statements by [the claimant's] treating or nontreating source . . . ."  Id.

During her hearing on August 31, 2000, plaintiff described her pain and physical limitations and explained why she retired from her job as an optical inspector.  (R. at 24-37.) Although she contends she stopped working due to her degenerative knee disease (id. at 103), plaintiff testified that she retired in 1993 because her pension was made available after

the company she worked for changed corporate owners. (Id. at 26-27.) When asked what prompted her to see her general practitioner in May of 1998, plaintiff stated that she experienced intense fatigue and, at that time, was normally resting in bed for approximately 80 percent of the day. (Id. at 30.) Plaintiff also testified that she had trouble keeping her balance and fell on at least one occasion, but she was unclear as to whether her loss of balance began before or after the date she was last insured. (Id. at 34-35, 36, 37.) Additionally, plaintiff's orthopedic physician suggested she undergo surgery, but plaintiff testified that she decided to tolerate her knee pain rather than assume the elevated risk of post-surgery infection associated with her diabetes. (Id. at 33-34.) ("But when I weigh the odds of the pain and what might happen with the surgery, I decided to stay with the pain.") The ALJ later determined that plaintiff's "allegations regarding her limitations on or prior to December 31, 1998 are not totally credible." (Id. at 157.)

Plaintiff's account of her physical limitations are inconsistent with the findings of the state agency medical consultant, Dr. C. R. Manley. Following his evaluation, Dr. Manley concluded that plaintiff had no exertional or postural limitations. (Id. at 124-25.) The ALJ also took note of the fact that plaintiff's treating physician never recorded treating plaintiff for her degenerative knee disease between May 12, 1998 and December 31, 1998. (Id. at 155.) Further, plaintiff indicated that she was able to perform a number of daily activities, including grocery shopping, cooking, and attending church. (Id. at 28, 102.) These findings, as well as the ambiguity as to whether plaintiff experienced difficulty balancing herself prior to or after the date she was last insured, constitute substantial evidence in support of the ALJ's conclusion that plaintiff's allegations concerning her physical limitations prior to December 31, 1998 were not entirely credible. So long as the determination is supported by substantial

evidence, "the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain." Aponte v. Sec., Dep't of Health and Human Servs. of U.S., 728 F.2d 588, 591 (2d Cir. 1984) (citation omitted) Accordingly, the ALJ's credibility determination will not be reversed.

### B. Plaintiff's RFC

Plaintiff challenges the ALJ's unfavorable decision at step four of the five-step evaluation process for benefits applications, see 20 C.F.R. §§ 404.1520, 416.920; that is, she contends there is no substantial evidence to support the ALJ's determination that she retained the RFC needed to perform sedentary work.  The crux of plaintiff's argument is that the ALJ did not afford sufficient weight to the opinions of Dr. LaFaso and her orthopedic physician, Dr. Van Gorder.  Dr. LaFaso opined that plaintiff could not sit for more than two hours, stand for more than ten minutes, or sustain a reasonable pace of work.  (R. at 132-33.)  He also concluded that plaintiff's limitations existed between May and December of 1998.  (Id. at 134.)  Additionally, Dr. Van Gorder determined on May 7, 1999 that plaintiff was a good candidate for knee replacement surgery.  (Id. at 114.)

Although a treating physician's findings should be afforded substantial weight, the Commissioner retains the authority to resolve conflicts in the medical evidence.  See Aponte, 728 F.2d at 591 (citing Richardson v. Perales, 402 U.S. 389, 399, 91 S. Ct. 1420, 1426 (1971)).  The ALJ made clear that he relied heavily upon Dr. Manley's medical findings and discounted Dr. LaFaso's and Dr. Van Gorder's opinions.  (R. at 155.)  In consideration of the conflicts between Dr. Manley's and Dr. LaFaso's findings, the ALJ found it significant that Dr. LaFaso's treatment notes omitted any mention of plaintiff's degenerative knee disease, let alone any complaints of pain or physical limitations associated with plaintiff's knee.  (Id.)

Indeed, Dr. LaFaso examined plaintiff on six different occasions between May 12, 1998 and October 27, 1998, and none of his notes support plaintiff's alleged physical limitations.  (See id. at 119-22.)  With respect to Dr. Van Gorder's conclusions, the ALJ accepted the opinion that plaintiff had developed pathology in her left knee for an extended period of time between 1976 and her date last insured, but he nonetheless determined plaintiff retained the RFC needed to sit six hours in an eight-hour day, stand and walk two hours in an eight-hour day, lift and carry up to ten pounds, and engage in unrestricted use of her upper extremities.  (Id. at 156.)  Specifically, Dr. Van Gorder noted that plaintiff complained of intermittent swelling in her knee, but did not experience "giving away, catching or locking . . . [or] morning stiffness." (Id. at 114.)  He also determined that plaintiff had a range of motion for her knee from "5 to about 105 degrees."  (Id.)  In light of these findings and Dr. Manley's conclusions, there is substantial evidence to support the ALJ's determination that none of plaintiff's physical limitations would inhibit sitting, light lifting, or making use of her upper extremities.  Therefore, the ALJ's RFC determination will not be reversed.

### C. New Evidence Submitted to the Appeals Council

Plaintiff also argues that the Appeals Council failed to properly consider new opinion evidence from Dr. Rosenberg.  In support of her position, plaintiff cites to Brown v. Apfel, 174 F.3d 59, 65 (2d Cir. 1999) for the proposition that the ALJ's decision must be reversed where new evidence renders his decision an unreasonable interpretation of the medical evidence in the record.  The issue in Brown was whether the frequency of the claimant's seizures qualified him for disability benefits.  See 174 F.3d at 63-64.  During his appeal before the Appeals Council, the claimant in Brown submitted additional medical evidence showing he experienced seizures more frequently than previously indicated by the

evidence initially submitted before the ALJ.  Id. at 64-65.  Accordingly, the ALJ's decision was reversed in light of the new evidence.  Id. at 65.

Here, in contrast, Dr. Rosenberg's evaluation does not provide new medical findings.  Rather, for the most part, his opinions merely reiterate Dr. LaFaso' s opinions. Additionally, to the extent that Dr. Rosenberg based his opinions on his physical examination of the plaintiff, he did not examine the plaintiff until October 14, 2005.  (See R. at 144.) Having examined the plaintiff well after her date of last insured, Dr. Rosenberg's opinions do not render the ALJ's RFC determination an unreasonable interpretation of the medical evidence in the record.  Therefore, the Appeals Council properly considered Dr. Rosenberg's findings.

## V.  CONCLUSION

Both the ALJ's credibility determination and his evaluation of plaintiff's RFC are supported by substantial evidence.  Notably, plaintiff's treating physician never recorded any complaints of knee pain or physical limitations associated with plaintiff's knee during the several evaluations leading up to her date last insured.  Further, plaintiff was unable to affirmatively state whether she began having trouble balancing herself before or after her date last insured, and Dr. Manley determined that plaintiff did not have any exertional limitations.  Finally, the Appeals Council properly considered Dr. Rosenberg's opinion because he did not offer new medical findings, and in any event, his physical evaluation of plaintiff occurred well after her date last insured.

Accordingly, it is

ORDERED that the determination of the Commissioner is AFFIRMED.

IT IS SO ORDERED.

_____
United States District Judge

Dated: December 16, 2009
          Utica, New York